# Cornock Decl. Exhibit 16

# EMPLOYEE AGREEMENT AS TO CONFIDENTIALITY, NON-COMPETITION, NON-SOLICITATION AND NON-INTERFERENCE

I acknowledge that in the course of performing services for the Company I will have access to, and be acquiring, confidential information and trade secrets concerning the Company's business affairs including, without limitation, information with respect to its financial results and prospects, future plans in research, advertising, product development, and/or marketing, and/or proprietary business processes. Accordingly, in consideration for my continued employment, compensation and benefits, and continued access to confidential information and trade secrets to be provided to me, I agree to comply fully with each and every provision of this Agreement, as follows:

1. **DEFINITIONS**

    (a)   "**Board**" means the board of managers of Revlon.

    (b)   "**Code of Conduct**" means the Revlon Code of Conduct and Business Ethics.

    (c)   "**Company**" means Revlon Consumer Products LLC, a Delaware limited liability company, its subsidiaries, divisions, and affiliates, and successors to any of them.

    (d)   "**Confidential Information**" means any information, including but not limited to a Trade Secret, disclosed to me or known by me through or in the course of my employment with the Company, directly or indirectly relating to the past, present, or anticipated business affairs of the Company, unless such information is or has become part of the public domain through no fault of mine. Confidential Information includes, but is not limited to, the following types of information and other information of a similar nature (whether or not reduced to writing or designated as confidential): (i) any non-public information regarding personal matters of any of the Company's directors or officers; (ii) the production processes, formulae, design concepts, specifications, techniques, and methods of any type related to the Company's products; (iii) information relating to the Company's Inventions (as defined below); (iv) the Company's internal personnel and financial information, vendor names and other vendor information (including vendor characteristics, services, and agreements), purchasing and internal cost information, internal services and operational manuals, and the manner and methods of conducting the Company's business; (v) marketing and development plans, price and cost data, price and fee amounts, pricing and billing policies, quoting procedures, marketing techniques and methods of obtaining business, forecasts and forecast assumptions and volumes, and future plans and potential strategies of the Company which have been or are being discussed; (vi) names of customers and their representatives, contracts and their contents and parties, customer services, data provided by customers, and the type, quantity, and specifications of products and services purchased, leased, licensed, or received by clients of the Company; (vii) the names and unique skills, abilities, assignments, or compensation levels of Company employees; and (viii)

Ex. 2-1

confidential or proprietary information disclosed by third parties under any agreement through which the Company has a duty to maintain as confidential or use only for certain limited purposes.

(e) **"Copyright Work"** means any work of authorship, including computer software, which I prepared alone or with others within the scope of my employment relating to the subject matter of my employment.

(f) **"Invention"** means any new or useful discovery or improvement relating to any technology, article, product, composition of matter, process, information system, computer hardware or software, computer application or computer code in source or object form, design, device, biological material, or machinery, whether or not patentable, and all related know-how, and any trademark or service mark, made or conceived by me alone or with others (i) during the period of my employment with the Company which directly or indirectly relates to the past, present, or anticipated business affairs of the Company at the time of the conception or results from or is suggested by any work which I have done or may do for the Company, or (ii) within one year after termination of my employment with Company which is derived from Confidential Information, Trade Secrets, or Copyright Work.

(g) **"RCP"** means Revlon Consumer Products LLC, a Delaware limited liability company.

(h) **"Restricted Entity"** means any other corporation, firm or business of which a material portion of its business is engaged in a business (or businesses) that is competitive with the material business(es) in which the Company is engaged on the date on which my employment with the Company terminates, in any geographical area in which the Company is engaged on such termination date.

(i) **"Revlon"** means Revlon Group Holdings LLC, a Delaware limited liability company.

(j) **"Term"** means the period beginning on the date that I sign this Agreement and ending on the date that my employment with the Company terminates for any reason. For clarity, the Term includes any Garden Leave Period.

(k) **"Trade Secret"** means information, including without limitation, any formula, pattern, drawing, compilation, program, device, method, technique, computer security information, process, cost data, supplier lists or product or related information, or an Invention, directly or indirectly related to the past, present, or anticipated business affairs of the Company, that derives value, actual or potential, from not being generally known to the public or to other persons who can obtain value from its disclosure or use and is the subject of efforts that are reasonable under the circumstances to maintain such secrecy. The definition of Trade Secret also includes, but is not limited to, the definition of a trade secret under any applicable trade secret law or statute.

2. **CONSIDERATION**

The consideration for this Agreement is my employment or continued employment by the Company, access to and continued access to the Confidential Information and Trade Secrets, and compensation and benefits to be provided for my services during such employment, including my participation in the Revlon Executive Severance Pay Plan, which I agree and acknowledge are adequate and acceptable consideration for this Agreement.

3. **NOTICE**

I will communicate to the appropriate employee of the Company promptly and fully all information relating to any Invention, Copyright Work, or Trade Secret. In the event I am requested or required to disclose any Confidential Information under any court order, subpoena, or other judicial process, I will promptly notify the Company, take all reasonable steps requested by the Company to defend against the compulsory disclosure, and permit the Company to take control with counsel of its choice in any proceeding relating to the compulsory disclosure.

4. **OWNERSHIP OF RIGHTS**

The Company shall own any Confidential Information, Invention, and Trade Secret. The Company shall be (i) the owner and author of any Copyright Work and (ii) the owner and the author of any other work that constitutes "work made for hire" under the copyright law or relates to the subject matter of my employment. The Company's ownership rights under this Agreement shall be in addition to the Company's common law rights.

5. **ASSIGNMENTS/APPLICATIONS**

I hereby irrevocably assign to the Company or its designee any right, title, or interest I may have in and to any Confidential Information, Trade Secret, Invention (and all patents and patent applications worldwide arising therefrom), and Copyright Work. Upon the request of the Company at any time during or after my employment, I will, at the Company's expense (but with no further remuneration to me): (i) promptly and fully assist the Company in the preparation, filing, and prosecution of any patent application, copyright, trademark, or other application for the protection of any Invention or Copyright Work; and (ii) promptly sign all lawful papers, take all lawful oaths, testify at any related trial or agency actions and do all lawful acts requested by the Company in connection with the protection of any Confidential Information, Trade Secret, Invention, or Copyright Work.

6. **RETURN OF TANGIBLE PROPERTY**

All tangible property and documents in my possession or control including, but not limited to, computers, cellular devices, data storage devices, biological materials, hard copy or computer disks, computer memory or other electronic writings, records, drawings, models, diagrams, blueprints, formulae, supplier lists, raw materials lists or other lists or compilations,

blueprints, notebooks, notes, memoranda, bulletins, reports, computer programs, client lists, e-mails or other electronically stored information, or memorializations of any kind coming into my possession or kept by me in connection with my employment are the exclusive property of the Company, whether or not they constitute or contain any Confidential Information, Trade Secret, or Invention or which embodies a Copyright Work. I agree to safeguard all such property and documents properly in accordance with all applicable Company policies and I will not copy or remove such property from the premises of the Company except for Company business upon proper authorization. I shall return to the Company all such documents and other materials, without keeping any copies or any portions thereof, upon termination of my employment, whether or not for cause and whatever the reason, or at any time the Company may so request, unless specific written consent is obtained from an officer of the Company to retain any such record.

7. **NONDISCLOSURE OF CONFIDENTIAL INFORMATION AND TRADE SECRETS AND NON-INTERFERENCE**

(a) I acknowledge that all Confidential Information, as defined above, is proprietary to the Company and is a special, valuable, and unique asset of the business of the Company, and that my giving service as an employee creates a relationship of confidence and trust between the Company and me with respect to the Confidential Information. In recognition thereof, I agree that during my employment with the Company and thereafter: (i) I will not at any time disclose directly or indirectly to any person or entity or use for my own benefit any such Confidential Information; (ii) I will restrict the disclosure of such Confidential Information to those Company employees and contractors with a need to know to perform services on behalf of the Company and who have agreed to be bound by similar confidentiality restrictions; (iii) I will take all reasonable precautions to prevent inadvertent disclosure of such Confidential Information; (iv) I will not at any time use, copy, or transfer such Confidential Information other than as strictly necessary to perform services on behalf of the Company; and (v) I will take all reasonable precautions to prevent inadvertent use, copying, or transfer of such Confidential Information. In particular and without limitation of the above, I agree that during my employment with the Company and thereafter I will not use Confidential Information to compete against the Company. The foregoing prohibitions shall include, without limitation, directly or indirectly publishing (or causing, participating in, assisting or providing any statement, opinion or information in connection with the publication of) any diary, memoir, letter, story, photograph, interview, article, essay, account or description (whether fictionalized or not) concerning any Confidential Information, publication being deemed to include any presentation or reproduction of any written, verbal or visual material in any communication medium, including any book, magazine, newspaper, internet publication or discussion group, social media, theatrical production or movie, or television or radio programming or commercial. This confidentiality provision does not apply to information which: (i) was already rightfully known to me prior to the time that it is disclosed to me hereunder; (ii) is in or has entered the public domain through

no breach of this Agreement or other wrongful act; or (iii) has been rightfully received by me from a third party not under obligation of confidentiality to the Company and without breach of this Agreement.

(b) I agree that I will not at any time during the Term, directly or indirectly, as a director, officer, stockholder, partner, associate, employee, consultant, owner, agent or independent contractor, become or be interested in, or associated with, any Restricted Entity. In addition, during the Term, I shall not have any direct or indirect interest (whether as a director, officer, stockholder, partner, proprietor, associate, employee, consultant, owner, agent or independent contractor) in any company which sells to, supplies services to or buys products or services from the Company, or engages in any other activity or relationship which would be contrary to the Company's conflict of interest policy as set forth in the Code of Conduct as from time to time in effect. Notwithstanding the foregoing, my ownership, directly or indirectly, of not more than one percent of the issued and outstanding stock of a corporation the shares of which are regularly traded on a national securities exchange or on the over-the-counter market shall not, solely on its own, be deemed to be a violation of this Section 7(b).

(c) I agree that I will not at any time during my employment with the Company, and for a period of twelve months following the termination thereof, directly or indirectly solicit, induce, influence, or attempt to solicit, induce, or influence any person then employed by the Company or during the six-month period prior to the date of the activity, to terminate his or her employment relationship with the Company or otherwise interfere with any such employment by or association with the Company for the purpose of associating, as an employee or otherwise, with any Restricted Entity or otherwise encourage any such employee to leave his or her employment with the Company; *provided* that this Section 7(c) will not apply to the hiring of administrative personnel with whom I worked directly and will not be violated by a general advertisement not specifically targeted at Company employees.

(d) I agree that I will not at any time during my employment with the Company, and for a period of twelve months following the termination thereof, solicit any customer to terminate its business relationship with the Company, it being understood that my engaging in ordinary course business relationships with any such customer in the good faith performance of my duties, including, following termination, duties with a subsequent employer, shall not constitute interference with customers.

**8. NON-DISPARAGEMENT**

I acknowledge and agree that I will not, directly or indirectly, make or cause to be made any statements or other communications in any form (including, without limitation, books, articles or writings of any other kind, as well as film, videotape, audio tape, computer/internet format, social media (which shall include, but not be limited to, Facebook, Instagram, Snapchat or LinkedIn) or any other medium) to any third parties criticizing or disparaging, or commenting negatively on the character or business reputation of the Company or any individual who, during

the term of my employment, served as a director or officer of Revlon or RCP. The Board shall not, directly or indirectly, make or cause to be made any statements or other communications in any form (including, without limitation, books, articles or writings of any other kind, as well as film, videotape, audio tape, computer/internet format, social media (which shall include, but not be limited to, Facebook, Instagram, Snapchat or LinkedIn) or any other medium) to any third parties criticizing or disparaging, or commenting negatively on my character or business reputation. The foregoing obligations will not apply to (i) any statements or opinions that are made under oath in any investigation, civil or administrative proceeding or arbitration in which I or Revlon or its subsidiaries have been compelled to testify by subpoena or other judicial process or which are privileged communications or (ii) any statements made about me in the ordinary course of preparing or providing performance reviews for me.

9. **GARDEN LEAVE**

(a) I agree that, not later than immediately prior to the date on which my employment with the Company is scheduled to terminate, the Company may provide me with written notice of its election to have my employment continue for a period ending not later than 30 days after such scheduled termination date. I further agree that, at any time during such continued employment period, the Company may provide me with written notice of its election to have such period end early. The period during which I continue to be employed following the date on which my employment with the Company was scheduled to terminate is referred to herein as the "**Garden Leave Period**".

(b) During the Garden Leave Period, I will continue to receive my base salary and employee benefits on the same basis as in effect as of immediately prior to the Garden Leave Period.

(c) I agree that during all or any part of the Garden Leave Period, the Company may require me not to be present at the offices of the Company and to refrain from undertaking all or any of my duties and contacting clients, colleagues, and advisors of the Company (unless otherwise instructed). I further agree that, during the Garden Leave Period, I will not breach Section 7 of this Agreement.

(d) For the avoidance of doubt, if I experience an Involuntary Termination and the Company elects to require that I remain employed for the Garden Leave Period, then on expiration of the Garden Leave Period, I will remain entitled to the Severance Benefits on the terms set forth in Section 3.1 of the Revlon Executive Severance Pay Plan, as applicable, including without limitation, if I die or suffer a Disability during the Garden Leave Period. Capitalized terms used but not defined in this paragraph have the meanings assigned to them in the Revlon Executive Severance Pay Plan.

10. **ENFORCEMENT OF OBLIGATIONS**

(a) I agree that my failure to perform any obligation under this Agreement will cause immediate and irreparable damage to the Company, that there is no adequate remedy at law for such failure, and that in the event of such failure the Company shall be entitled to injunctive relief without posting of any bond, and such other relief as may be just and proper.

(b) Without limiting the generality of the foregoing, in the event that I receive a grant of an award under a Company equity incentive plan, I irrevocably agree and consent that if I violate or fail fully to comply with and perform each and every covenant and undertaking set forth in this Agreement, then, in addition to each and every other remedy of the Company, to the extent that on the date of such violation or non-performance there shall remain outstanding and unexercised (whether or not then vested) any portion of any stock option or stock appreciation right or there shall remain outstanding and unvested any portion of any other award granted to me under a Company equity incentive plan, such award or portion thereof shall immediately and automatically terminate and become unexercisable, without any action or notice by the Company, notwithstanding any contrary provision of a Company equity incentive plan or any award agreement thereunder regarding post-employment exercise or vesting of awards or otherwise.

(c) I specifically agree and consent that this Agreement shall be governed by, construed pursuant to, and enforced in accordance with the local laws of the State of New York and submit, consent, and agree to the exclusive jurisdiction of the Federal and State courts sitting in the County of New York for all such purposes. In the event that the Company applies to seal any papers produced or filed in any judicial proceedings to preserve confidentiality, I hereby specifically agree not to oppose such application and to use my best efforts to join in such application. In the event that any court should determine that any provision of this Agreement is unenforceable for any reason, I hereby specifically agree and request that the court making such determination shall modify and reform the provision or provisions so found to be unenforceable and, in its modified form, specifically enforce the same.

## 11. **DISCLOSURE OF INVENTIONS**

(a) I represent that there are no unpatented inventions made or conceived by me before entering into employment with the Company which are related to the Company's past, present, or anticipated future business affairs except those listed below, which inventions (if demonstrated to have been so made or conceived) are excluded from this Agreement.

(b) Disclosure of Inventions Prior to this Agreement

_____ None

or

1)

2)

      3)

      4)

      (attach additional sheet if necessary)

    (c)    I agree to disclose all of my inventions made solely by me or jointly with others during my employment with the Company and within the one year after the termination thereof which I believe are not Inventions as defined in this Agreement.

    (d)    The Company agrees to receive and review the disclosures made by me pursuant to this Section 11 in confidence.

## 12. RESERVATION OF RIGHTS

The Company agrees nothing in this Agreement shall prohibit or restrict you from responding to any inquiry, or otherwise communicating with, any federal, state or local administrative or regulatory agency or authority, including, but not limited to, the Securities and Exchange Commission (SEC), the Equal Employment Opportunity Commission (EEOC) or the National Labor Relations Board (NLRB), or filing a charge with or participating in an investigation conducted by any governmental agency or authority.

## 13. PROTECTED DISCLOSURES

    (a)    Nothing in this Agreement or in any other document, agreement or policy relating to the your service with or employment by the Company prohibits or restricts the you or the Company from disclosing relevant and necessary information or documents in any suit, action, investigation or other proceeding relating to you service with or employment by the Company, or initiating communications directly with, cooperating with, providing relevant information to, testifying before, or otherwise assisting in an investigation or proceeding by any governmental or regulatory body; provided that, if and to the extent permitted by law, upon receipt of any subpoena, court order or other legal process compelling the disclosure of any such information or documents, you shall give prompt written notice to the Company to permit the Company to protect its interests to the fullest extent possible.

    (b)    The Company acknowledges that you cannot be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a Trade Secret that: (1) is made: (A) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (B) solely for the purpose of reporting or investigating a suspected violation of law; or (2) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. As a result, the Company and you shall have the right to disclose Trade Secrets in confidence to federal, state, and local government officials, or to an attorney, for the sole purpose of reporting or investigating a suspected violation of law.

(c) Both the Company and you also have the right to disclose Trade Secrets in a document filed in a lawsuit or other proceeding, but only if the filing is made under seal and protected from public disclosure.

(d) Nothing in this Agreement is intended to conflict with that right or to create liability for disclosures of Trade Secrets that are expressly allowed by the foregoing.

**14. SEVERABILITY**

If any part of this Agreement is declared void or unenforceable in any geographic area and/or for any particular duration, such part shall be severable from this Agreement, modified so as to render it enforceable, and remain in full force and effect for the geographic area and/or duration in which the part is not so held invalid, and the remainder of this Agreement shall remain in full force and effect in all geographic areas and for such duration as the court may permit.

**15. CONFLICT WITH PRIOR AGREEMENTS**

(a) This Agreement shall be binding upon my heirs, executors, administrators or other legal representatives, and assigns. In the event of any conflict between this Agreement and any prior agreement which cannot reasonably be reconciled, this Agreement shall prevail.

(b) This Agreement may not be altered, modified, changed, or discharged except in a writing signed by me and an authorized employee or officer of the Company.

**16. ACKNOWLEDGEMENT**

I acknowledge that I have carefully read and fully understand this Agreement and that I have had sufficient time to consider the decision whether to sign this Agreement and to seek the advice of counsel.

_____     _____
Date                                         Print Name


                                               _____
                                               Signature



**Vanessa Kidd**
100102921, 041 - Elizabeth Arden, Inc

## Employee Agreement

edit labels

| | |
|---|---|
| Document | Employee Agreement |
| Category | Employee Agreement |
| Message | Please check 'Accept' to certify that you have reviewed and accept Revlon's Employee Agreement As To Confidential Info Competition, Non-Solicitation and Non-Interference. |

| Status | Status Date | Comments |
|---|---|---|
| Accepted | 06/19/2023 8:34 AM | |