# Cornock Decl. Exhibit 17



**EMPLOYEE AGREEMENT AS TO CONFIDENTIALITY, NON-COMPETITION, AND NON-INTERFERENCE**

I acknowledge that in the course of performing services for the Company I will have access to, and be acquiring, confidential information and trade secrets concerning the Company's business affairs including, without limitation, information with respect to its financial results and prospects, future plans in research, advertising, product development, and/or marketing, and/or proprietary business processes.  Accordingly, in consideration for my continued employment, compensation and benefits, and continued access to confidential information and trade secrets to be provided to me, I agree to comply fully with each and every provision of this Agreement, as follows:

1. **DEFINITIONS**

    (a)    "Company" means Revlon Consumer Products Corporation, its subsidiaries, divisions, and affiliates, and successors to any of them.

    (b)    "Confidential Information" means any information, including but not limited to a Trade Secret, disclosed to me or known by me through or in the course of my employment with the Company, directly or indirectly relating to the past, present, or anticipated business affairs of the Company, unless such information is or has become part of the public domain through no fault of mine.  Confidential Information includes, but is not limited to, the following types of information and other information of a similar nature (whether or not reduced to writing or designated as confidential): (i) any non-public information regarding personal matters of any of the Company's directors or officers; (ii) the production processes, formulae, design concepts, specifications, techniques, and methods of any type related to the Company's products; (iii) information relating to the Company's Inventions (as defined below); (iv) the Company's internal personnel and financial information, vendor names and other vendor information (including vendor characteristics, services, and agreements), purchasing and internal cost information, internal services and operational manuals, and the manner and methods of conducting the Company's business; (v) marketing and development plans, price and cost data, price and fee amounts, pricing and billing policies, quoting procedures, marketing techniques and methods of obtaining business, forecasts and forecast assumptions and volumes, and future plans and potential strategies of the Company which have been or are being discussed; (vi) names of customers and their representatives, contracts and their contents and parties, customer services, data provided by customers, and the type, quantity, and specifications of products and services purchased, leased, licensed, or received by clients of the Company; (vii) the names and unique skills, abilities, assignments, or compensation levels of Company employees; and (viii) confidential or proprietary information disclosed by third parties under any agreement through which the Company has a duty to maintain as confidential or use only for certain limited purposes.

    (c)    "Copyright Work" means any work of authorship, including computer software, which I prepared alone or with others within the scope of my employment relating to the subject matter of my employment.

    (d)    "Invention" means any new or useful discovery or improvement relating to any technology, article, product, composition of matter, process, information system, computer hardware or

software, computer application or computer code in source or object form, design, device, biological material, or machinery, whether or not patentable, and all related know-how, and any trademark or service mark, made or conceived by me alone or with others (i) during the period of my employment with the Company which directly or indirectly relates to the past, present, or anticipated business affairs of the Company at the time of the conception or results from or is suggested by any work which I have done or may do for the Company, or (ii) within one year after termination of my employment with Company which is derived from Confidential Information, Trade Secrets, or Copyright Work.

(e) "Restricted Entity" means any other corporation, firm, or business engaged in a consumer or professional cosmetics, haircare, skincare, fragrances, or toiletries business, or any other business that is competitive in any geographical area with any business of the Company to which I was assigned or for which I rendered substantial employment services or with respect to which I was exposed to Confidential Information or Trade Secrets at any time during the two years prior to the termination of my employment with the Company.

(f) "Trade Secret" means information, including without limitation, any formula, pattern, drawing, compilation, program, device, method, technique, computer security information, process, cost data, supplier lists or product or related information, or an Invention, directly or indirectly related to the past, present, or anticipated business affairs of the Company, that derives value, actual or potential, from not being generally known to the public or to other persons who can obtain value from its disclosure or use and is the subject of efforts that are reasonable under the circumstances to maintain such secrecy. The definition of Trade Secret also includes, but is not limited to, the definition of a trade secret under any applicable trade secret law or statute.

2. **CONSIDERATION**

The consideration for this Agreement is my employment or continued employment by the Company, access to and continued access to the Confidential Information and Trade Secrets, and compensation and benefits to be provided for my services during such employment, which I agree and acknowledge are adequate and acceptable consideration for this Agreement.

3. **NOTICE**

I will communicate to the appropriate employee of the Company promptly and fully all information relating to any Invention, Copyright Work, or Trade Secret. In the event I am requested or required to disclose any Confidential Information under any court order, subpoena, or other judicial process, I will promptly notify the Company, take all reasonable steps requested by the Company to defend against the compulsory disclosure, and permit the Company to take control with counsel of its choice in any proceeding relating to the compulsory disclosure.

4. **OWNERSHIP OF RIGHTS**

The Company shall own any Confidential Information, Invention, and Trade Secret. The Company shall be (i) the owner and author of any Copyright Work and (ii) the owner and the author of any other work that constitutes "work made for hire" under the copyright law or relates to the subject



matter of my employment. The Company's ownership rights under this Agreement shall be in addition to the Company's common law rights.

5. **ASSIGNMENTS/APPLICATIONS**

Upon the request of the Company at any time during or after my employment, I will, at the Company's expense (but with no further remuneration to me): (i) promptly assign to the Company or its designee any right, title, or interest I may have in and to any Confidential Information, Trade Secret, Invention (and all patents and patent applications worldwide arising therefrom), and Copyright Work; (ii) promptly and fully assist the Company in the preparation, filing, and prosecution of any patent application, copyright, trademark, or other application for the protection of any Invention or Copyright Work; and (iii) promptly sign all lawful papers, take all lawful oaths, testify at any related trial or agency actions and do all lawful acts requested by the Company in connection with the protection of any Confidential Information, Trade Secret, Invention, or Copyright Work.

6. **RETURN OF TANGIBLE PROPERTY**

All tangible property and documents in my possession or control including, but not limited to, computers, cellular devices, data storage devices, biological materials, hard copy or computer disks, computer memory or other electronic writings, records, drawings, models, diagrams, blueprints, formulae, supplier lists, raw materials lists or other lists or compilations, blueprints, notebooks, notes, memoranda, bulletins, reports, computer programs, client lists, e-mails or other electronically stored information, or memorializations of any kind coming into my possession or kept by me in connection with my employment are the exclusive property of the Company, whether or not they constitute or contain any Confidential Information, Trade Secret, or Invention or which embodies a Copyright Work. I agree to safeguard all such property and documents properly in accordance with all applicable Company policies and I will not copy or remove such property from the premises of the Company except for Company business upon proper authorization. I shall return to the Company all such documents and other materials, without keeping any copies or any portions thereof, upon termination of my employment, whether or not for cause and whatever the reason, or at any time the Company may so request, unless specific written consent is obtained from an officer of the Company to retain any such record.

7. **NONDISCLOSURE OF CONFIDENTIAL INFORMATION AND TRADE SECRETS AND NON-INTERFERENCE**

(a)   I acknowledge that all Confidential Information, as defined above, is proprietary to the Company and is a special, valuable, and unique asset of the business of the Company, and that my giving service as an employee creates a relationship of confidence and trust between the Company and me with respect to the Confidential Information. In recognition thereof, I agree that during my employment with the Company and thereafter: (i) I will not at any time disclose directly or indirectly to any person or entity or use for my own benefit any such Confidential Information; (ii) I will restrict the disclosure of such Confidential Information to those Company employees and contractors with a need to know to perform services on behalf of the Company and who have agreed to be bound by similar confidentiality

**REVLON**®

restrictions; (iii) I will take all reasonable precautions to prevent inadvertent disclosure of such Confidential Information; (iv) I will not at any time use, copy, or transfer such Confidential Information other than as strictly necessary to perform services on behalf of the Company; and (v) I will take all reasonable precautions to prevent inadvertent use, copying, or transfer of such Confidential Information.  In particular and without limitation of the above, I agree that during my employment with the Company and thereafter I will not use Confidential Information to compete against the Company. The foregoing prohibitions shall include, without limitation, directly or indirectly publishing (or causing, participating in, assisting or providing any statement, opinion or information in connection with the publication of) any diary, memoir, letter, story, photograph, interview, article, essay, account or description (whether fictionalized or not) concerning any Confidential Information, publication being deemed to include any presentation or reproduction of any written, verbal or visual material in any communication medium, including any book, magazine, newspaper, internet publication or discussion group, social media, theatrical production or movie, or television or radio programming or commercial. This confidentiality provision does not apply to information which: (i) was already rightfully known to me prior to the time that it is disclosed to me hereunder; (ii) is in or has entered the public domain through no breach of this Agreement or other wrongful act; or (iii) has been rightfully received by me from a third party not under obligation of confidentiality to the Company and without breach of this Agreement.

(b)   I agree that I will not at any time during my employment with the Company, and for a period of twelve months following the termination thereof, directly or indirectly solicit, induce, influence, or attempt to solicit, induce, or influence any person then employed by the Company with whom I have had business-related contact during my employment with the Company, to terminate his or her employment relationship with the Company or otherwise interfere with any such employment by or association with the Company for the purpose of associating, as an employee or otherwise, with any Restricted Entity or otherwise encourage any such employee to leave his or her employment with the Company.

(c)   I agree that I will not at any time during my employment with the Company, and for a period of twelve months following the termination thereof, directly or indirectly solicit, induce, influence, or attempt to solicit, induce, or influence any customer, supplier, or vendor of the Company with whom I have had business-related contact during my employment with the Company, or concerning which I had access to Confidential Information, to divert his, her, or its business to any Restricted Entity or otherwise encourage such customer, supplier, or vendor to terminate its business relationship with the Company or otherwise interfere with any business or contractual relationship of the Company that may exist from time to time, including but not limited to with any supplier, customer, or vendor.

8. **NON-COMPETITION AND CONFLICTS OF INTEREST DURING EMPLOYMENT**

During my employment with the Company, unless approved in accordance with the Company's Code of Conduct and Business Ethics, I shall not have any direct or indirect interest (whether as a director, officer, stockholder, partner, proprietor, associate, employee, consultant, owner, agent, or independent contractor) in any Restricted Entity or any company which sells to, supplies services to, or

**REVLON**

buys products or services from the Company, or engage in any other activity or relationship which would be contrary to the Company's conflict of interest policy as set forth in its Code of Conduct and Business Ethics, as from time to time in effect.  This prohibition does not apply to solely owning, directly or indirectly, not more than one percent of the issued and outstanding common stock of a corporation, the shares of which are regularly traded on a national securities exchange or in the over-the-counter market.

9. **NON-COMPETITION AFTER EMPLOYMENT**

(a) I recognize that the Confidential Information, Inventions, and Trade Secrets are special and unique and of great value to the Company, that the Company has made a substantial investment in their development, that their disclosure to anyone not authorized to become aware of them, especially to any Restricted Entity, would cause irreparable injury to the Company's business, and that my employment with or interest in a Restricted Entity would make effective enforcement of this Agreement impossible.

(b) Because of this, should my employment with the Company terminate for any reason, I agree to comply with the restrictions set forth in paragraph (e) of this Section during any period that the Company agrees to provide me with continued payment of my salary or wages or to provide me separation or severance pay, pursuant to any agreement, severance policy or program of the Company, or otherwise ("Severance Period").  In the event that I receive any lump sum payment in lieu of any such continuing payment during the Severance Period, I agree to comply with the restrictions set forth in paragraph (e) of this Section for the remainder of the Severance Period during which continuing payments would have been made.

(c) In addition, having in mind that the preceding paragraph (b) may not adequately protect the Company's interests against voluntary or coerced disclosure or misuse, I agree that the Company shall have the option to further restrict my employment and other interests as follows.  If, during my employment with the Company and at any time during the 12 months following the termination of my employment with the Company for any reason, I am offered employment with or any other interest referred to in paragraph (e) of this Section with a Restricted Entity and I wish to accept the same, I will give prompt written notice to the Company's Vice President, Global Human Resources, at 1 New York Plaza, New York, New York 10004, (i) stating that I have been offered such employment or other interest, representing that such offer is a bona fide and firm offer, and that I intend to accept the same unless precluded hereby, specifying the specific employment title and duties or other interest so offered and the terms (including base salary) of such offer, (ii) consenting to the Company contacting appropriate officials at such other company solely for the purpose of verifying the nature and terms of the employment or other interest offered, and (iii) releasing the Company from any claim which may arise as a result of such contact.   The Company will maintain as confidential the information I provide with respect to such offer except as otherwise provided herein.

(d) If the Company, in its sole discretion, determines that the Confidential Information, Inventions, and/or Trade Secrets to which I had access require such protection and elects, therefore, to restrict my employment or other interest as provided in paragraph (e) of this Section, it shall be entitled

to do so by giving me written notice no later than fourteen days after the Company receives written notice from me as above provided, specifying a period expiring not more than twelve months following my last day of employment with the Company during which it elects to restrict my employment or other interest (the "Restricted Period"), and irrevocably agreeing to pay me monthly for each month (or portion thereof) commencing on the later of (x) the date of the Company's notice or (y) the date that the Severance Period terminates, and continuing through the end of the Restricted Period, the greater of (i) my regular monthly base salary in effect on the last day of my employment with the Company or (ii) the regular monthly base salary or other monthly compensation offered by the new employer or other entity (pro-rated for any partial month).

(e)   If the option provided for in paragraph (d) of this Section is so exercised or any payments are made as set forth in paragraph (b) of this Section, I agree that during the period for which payments as above provided are made, I will not directly or indirectly, as a director, officer, stockholder, partner, associate, employee, consultant, owner, agent, or independent contractor become or be interested in, or associated with, any Restricted Entity.

(f)   Notwithstanding any other provision of this Agreement, if during the Restricted Period I receive compensation for employment or consulting services rendered to any corporation, firm, or business which (i) is not a Restricted Entity or (ii) is a Restricted Entity as to which the Company, after due notice from me as required by paragraph (c) of this Section, does not duly exercise its option under paragraph (d) of this Section, the amounts of such payments referred to in paragraph (d) of this Section shall be reduced by the amount of such other compensation payable as a result of such other employment or consulting services.

**10. ENFORCEMENT OF OBLIGATIONS**

(a)   I agree that my failure to perform any obligation under this Agreement will cause immediate and irreparable damage to the Company, that there is no adequate remedy at law for such failure, and that in the event of such failure the Company shall be entitled to injunctive relief without posting of any bond, and such other relief as may be just and proper.

(b)   Without limiting the generality of the foregoing, in the event that I receive a grant of an Award under the Revlon Stock Plan, I irrevocably agree and consent that if I violate or fail fully to comply with and perform each and every covenant and undertaking set forth in this Agreement, then, in addition to each and every other remedy of the Company, to the extent that on the date of such violation or non-performance there shall remain outstanding and unexercised (whether or not then vested) any portion of any stock option or stock appreciation right or there shall remain outstanding and unvested any portion of any other Award granted to me under the Revlon Stock Plan, such Award or portion thereof shall immediately and automatically terminate and become unexercisable, without any action or notice by the Company, notwithstanding any contrary provision of the Revlon Stock Plan or any Plan agreement thereunder regarding post-employment exercise or vesting of Awards or otherwise.

(c)   I specifically agree and consent that this Agreement shall be governed by, construed pursuant to, and enforced in accordance with the local laws of the State of New York and submit, consent, and agree to the exclusive jurisdiction of the Federal and State courts sitting in the County of

**REVLON**

New York for all such purposes. In the event that the Company applies to seal any papers produced or filed in any judicial proceedings to preserve confidentiality, I hereby specifically agree not to oppose such application and to use my best efforts to join in such application. In the event that any court should determine that any provision of this Agreement is unenforceable for any reason, I hereby specifically agree and request that the court making such determination shall modify and reform the provision or provisions so found to be unenforceable and, in its modified form, specifically enforce the same.

**11. DISCLOSURE OF INVENTIONS**

(a)   I represent that there are no unpatented inventions made or conceived by me before entering into employment with the Company which are related to the Company's past, present, or anticipated future business affairs except those listed below, which inventions (if demonstrated to have been so made or conceived) are excluded from this Agreement.

(b)   Disclosure of Inventions Prior to this Agreement

_____ None

or

1)

2)

3)

4)

(attach additional sheet if necessary)

(c)   I agree to disclose all of my inventions made solely by me or jointly with others during my employment with the Company and within the one year after the termination thereof which I believe are not Inventions as defined in this Agreement.

(d)   The Company agrees to receive and review the disclosures made by me pursuant to this Section 11 in confidence.

**12. RESERVATION OF RIGHTS**

The Company agrees nothing in this Agreement shall prohibit or restrict you from responding to any inquiry, or otherwise communicating with, any federal, state or local administrative or regulatory agency or authority, including, but not limited to, the Securities and Exchange Commission (SEC), the Equal Employment Opportunity Commission (EEOC) or the National Labor Relations Board (NLRB), or filing a charge with or participating in an investigation conducted by any governmental agency or authority.

**13. PROTECTED DISCLOSURES**

(a) Nothing in this Agreement or in any other document, agreement or policy relating to the your service with or employment by the Company prohibits or restricts the you or the Company from disclosing relevant and necessary information or documents in any suit, action, investigation or other proceeding relating to you service with or employment by the Company, or initiating communications directly with, cooperating with, providing relevant information to, testifying before, or otherwise assisting in an investigation or proceeding by any governmental or regulatory body; provided that, if and to the extent permitted by law, upon receipt of any subpoena, court order or other legal process compelling the disclosure of any such information or documents, you shall give prompt written notice to the Company to permit the Company to protect its interests to the fullest extent possible.

(b) The Company acknowledges that you cannot be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a Trade Secret that: (1) is made: (A) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (B) solely for the purpose of reporting or investigating a suspected violation of law; or (2) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.  As a result, the Company and you shall have the right to disclose Trade Secrets in confidence to federal, state, and local government officials, or to an attorney, for the sole purpose of reporting or investigating a suspected violation of law.

(c) Both the Company and you also have the right to disclose Trade Secrets in a document filed in a lawsuit or other proceeding, but only if the filing is made under seal and protected from public disclosure.

(d) Nothing in this Agreement is intended to conflict with that right or to create liability for disclosures of Trade Secrets that are expressly allowed by the foregoing.

**14. SEVERABILITY**

If any part of this Agreement is declared void or unenforceable in any geographic area and/or for any particular duration, such part shall be severable from this Agreement, modified so as to render it enforceable, and remain in full force and effect for the geographic area and/or duration in which the part is not so held invalid, and the remainder of this Agreement shall remain in full force and effect in all geographic areas and for such duration as the court may permit.

**15. CONFLICT WITH PRIOR AGREEMENTS**

(a) This Agreement shall be binding upon my heirs, executors, administrators or other legal representatives, and assigns.  In the event of any conflict between this Agreement and any prior agreement which cannot reasonably be reconciled, this Agreement shall prevail.

(b) This Agreement may not be altered, modified, changed, or discharged except in a writing signed by me and an authorized employee or officer of the Company.



**16. ACKNOWLEDGEMENT**

      I acknowledge that I have carefully read and fully understand this Agreement and that I have had sufficient time to consider the decision whether to sign this Agreement and to seek the advice of counsel.

5/9/2018

_____     _____
Date                                         Print Name

                                Electronically Signed By
                                Ashley Fass

                          _____
                          Signature