UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REVLON CONSUMER PRODUCTS LLC
and ELIZABETH ARDEN, INC.

        Plaintiffs,

-against-

GIVE BACK BEAUTY S.A., et al.,

        Defendants.

Case No. 1:24-cv-06438-ER-RWL

# DECLARATION OF MARNI SHEPARD

I, MARNI SHEPARD, declare and state as follows:

1.     I am Global Vice President Talent Partnerships at Plaintiff Revlon Consumer Products LLC ("Revlon"). I have worked at Revlon since January 2018. My maiden name, which I continue to use often in professional contexts, is Golden. I make this declaration based on personal knowledge, the books and records of Plaintiffs Revlon and Elizabeth Arden, Inc. ("Elizabeth Arden"), information reported to me in the ordinary course of business by individuals with a business duty to accurately report that information, and on information and belief.

2.     As part of my job responsibilities at Revlon, I manage the celebrity ("talent") partnerships and relationships across Revlon's color cosmetics and hair portfolios as well as Revlon's celebrity fragrance licenses, the latter inclusive of Elizabeth Arden. In 2023, I was tasked with responsibility for obtaining an extension to the licensing agreement between Elizabeth Arden and Britney Brands, which otherwise was scheduled to expire on December 31, 2024. In connection with that effort, I worked closely with Vanessa Kidd ("Kidd"), who was Senior Vice President, Global Marketing for Revlon's Fragrance Portfolio.

1

3. As Senior Vice President, Global Marketing for Revlon's Fragrance Portfolio, Kidd was steeped in the details of the relationship with Britney Brands. Her participation in the communications with Britney Brands concerning an extension was material and valuable to the process of securing a continuation of the business relationship.

4. The Britney Brands relationship is extremely valuable to Revlon. The fragrances are very popular in certain markets. It is an account worth tens of millions of dollars. Because of the importance of the relationship, we made outreach to the Britney Brands team in 2023 for purposes of communicating that Revlon was eager to extend the parties' licensing agreement. We wanted to get a head start on negotiating the specific terms for an extension.

5. The business people who represent Britney Brands in its interactions with Revlon include Cade Hudson ("Hudson"), who is Britney Spears's manager, Christian Carino ("Carino"), a talent agent at Creative Artists Agency ("CAA"), and Alexandra Kopp ("Kopp"), a lawyer at CAA.

6. We began negotiating the terms for an extension of the license agreement in the fall of 2023 directly with Hudson. Hudson looped CAA into the conversation in November 2023. The Britney Brands team informed us that they were exploring other options, but it was their preference to continue the relationship with Revlon.

7. In February 2024, after I expressed an interest in moving more quickly to get to an agreement, Hudson stated in an email message: "NOTHING moves fast in Britney world." He asked that Revlon "follow our lead here." A copy of that email message is attached hereto as Exhibit A.

8. By March 1, 2024, we had reached agreement with the Britney Brands representatives on the material economic and other terms for an extension. Revlon's in-house

counsel Steven Rosenthal took the pen on drafting a proposed written amendment to the license agreement to reflect the extension's financial and other terms. On March 20, 2024, we sent that draft to the Britney Brands representatives. On April 2, 2024, Kopp sent us comments on the draft on behalf of Britney Brands.

9. On April 5, 2024, I had a telephone conversation with Hudson. He relayed to me in that conversation that questions had been raised by someone from associated with Britney Brands and that he had heard, among other things, that Revlon was considering a transaction with Give Back Beauty ("GBB") - either acquiring GBB or selling to GBB - that would potentially negatively impact his client. Hudson asked me about the accuracy of that information and whether Revlon was having any such discussions with GBB, telling me that this person told him that GBB was not a particularly good look for Britney Brands and that they would have real concerns if Revlon were considering a transaction with GBB concerning the Elizabeth Arden fragrance business. Hudson did not provide the source of his information.

10. I promptly took Hudson's concerns to Revlon's Chief Marketing Officer, Martine Williamson. She informed me that she had not heard anything about this and that she would check with Will Cornock to confirm. Within the hour she confirmed with Cornock that none of this information about Revlon transacting with GBB or selling the fragrance business was accurate. I immediately contacted Hudson to assure him that Revlon was not considering a transaction with GBB or transferring or discontinuing the fragrance business. I reaffirmed to Hudson that Revlon was fully committed to the fragrance business on a going-forward basis, that fragrance is a priority for Revlon and that Revlon is investing in the fragrance business.

11. On April 15, Kidd told me during a phone call that she had tendered her resignation. She informed me that her new job opportunity had moved very quickly, over the course of only a few weeks. She did not tell me where she was going.

12. On April 16, 2024, Hudson again reached out to me directly. He told me in that conversation that he had been informed that GBB was supposedly taking the head of Revlon's fragrance business – Vanessa Kidd – and the core Revlon fragrance team.

13. After my call with Hudson, I ran into Kidd in the office hallway. I told Kidd that Hudson knew that Kidd was going to GBB. Kidd turned pale. She stared at me in apparent shock. She said, "How? They made me sign an NDA." I understood Kidd's statement to convey that she had signed a non-disclosure agreement with GBB that prohibited her from disclosing the identity of her new employer.

14. At this time, in mid-April 2024, it was my understanding that the extension with Britney Brands was virtually complete. I had no concerns about Kidd continuing to participate in the final stage of the negotiations over the contract language. It was standard operating procedure at Revlon for employees to continue to work on their pending projects until their final departure dates.

15. We had a videoconference meeting scheduled with the Britney Brands team on April 17, 2024 to discuss the draft amendment to the Licensing Agreement. In advance of the meeting, I spoke to Kidd. I asked Kidd to take time at the end of the Britney Brands discussion to speak to Hudson. I wanted Kidd to reassure Hudson about Revlon's commitment to the fragrance business and the Britney Brands account and to confirm to Hudson that the Britney Brands account would be well looked after by "pumping up" the rest of the Revlon team to Hudson. Kidd agreed to do so.

16. At the close of the video conference on April 17, Kidd requested time to speak just with Hudson, as we had agreed. I remained on the call. Kidd confirmed to Hudson that she was leaving Revlon. Kidd also stressed to Hudson that, after her departure, the Britney Brands fragrance business would continue to be in good hands with Dominick Romeo, whom he already knew very well and who had primary responsibility for the Britney Brands account at Revlon.

17. From my perspective, I thought that the call had gone well and things were moving in the right direction. Carino at CAA wrote an encouraging note following the call. He said: "Let's get this done everyone." A copy of that email message is attached hereto as Exhibit B.

18. The next day, on April 18, 2024, CAA's Kopp distributed an updated version of the written amendment. Kopp wrote, "Please let us know if any questions or comments remain. If not, we can circulate for signature." A copy of that email message is attached hereto as Exhibit C.

19. On April 23, 2024, we informed the Britney Brands team that Revlon fully accepted the written amendment that Kopp had circulated on April 18, 2024. I was out of the office that day. In my absence, in order to avoid any delay, my colleague Isabelle Andre sent the email message to Britney Brands. She wrote: "We are circulating the attached clean version for signature on our end and will send through for countersignature as soon as possible." A copy of the email message is attached hereto as Exhibit D.

20. On April 24, 2024, Andre circulated a signed copy of the written amendment, which was executed on behalf of Elizabeth Arden by Revlon's Chief Financial Officer. Andre asked that the Britney Brands team "Please have Britney sign and send back to us." A copy of that email message is attached hereto as Exhibit E.

21. As of April 24, 2024, we considered the extension completed. Elizabeth Arden had signed on the dotted line, agreeing to the writing that the Britney Brands team had circulated on April 18.

22. On April 26, 2024, Kopp acknowledged receipt of the signed agreement.

23. However, Kopp communicated that their client "does not want to proceed on the proposed terms." Kopp asked to schedule a call. A copy of that email message is attached hereto as Exhibit F.

24. At Revlon, we were shocked at this turn of events. The Britney Brands business team had represented that they had authorization and approval from their client on all terms. They had sent us a writing that was ready for signature, and Revlon executed that writing.

25. Kopp did not identify any issues with the contract they had sent on April 18 and that we had signed on April 24, 2024. We assumed that the delay must be due to Ms. Spears being focused on other matters. We expected that the contract would be signed, in time, when Ms. Spears was ready.

26. I attempted to get on the phone with the Britney Brands team immediately. They delayed scheduling a call.

27. On May 1, 2024, we finally spoke with Carino. Carino informed us that Britney Brands was not in a position to make a commitment at that time. During the discussion, Carino repeatedly expressed concerns about Revlon's stability in the fragrance business. I was very surprised to hear those concerns at such a late date. I reiterated that Revlon is fully committed to the fragrance business.

28. Kidd's last day at Revlon was May 3, 2024.

29. On May 8, 2024, Carino sent us an email stating, "Britney has made the decision not to extend the licensing deal with Revlon beyond its current term." A copy of that email message is attached as Exhibit G.

30. Notwithstanding this message, I continued to communicate with the Britney Brands team. I asked whether there were any new deal points that they wanted, but they raised no new requests. At this time, I still hoped that there was an opportunity for Britney Spears to sign the written extension, once she had an opportunity to focus on the matter and let recent current events pass.

31. I am informed and believe that Dominick Romeo tendered his resignation on May 9, 2024. Only a few weeks prior, when I asked Kidd to reassure Hudson about the Revlon relationship during our April 17, 2024 videoconference, she had stated to Hudson that Britney Brands would continue to be in good hands with Dominick at Revlon. I subsequently learned that Dominick Romeo followed Kidd to GBB.

32. On May 30, 2024, Carino sent me an email message stating: "Britney has closed a licensing agreement with another partner in the beauty and fragrance space that takes effect January 1, 2025." A copy of that email message is attached as Exhibit H.

33. I spoke on the telephone with Carino that afternoon after receiving his email message. In that conversation, Carino questioned the stability of Revlon's fragrance business after recent reorganizations and told me, among other things, that Britney Brands was influenced to end the relationship with Revlon by the departure of Revlon's entire fragrance team, immediately on the heels of Kidd's departure. He did not tell me the name of the new partner.

34.     I learned in late June 2024 that Romeo, Ashley Fass and Reid Mulvihill, all of whom had worked on the fragrance team at Revlon and reported to Kidd, had been hired by and were working at GBB.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at New York, New York on September 12, 2024.

Signed by:

*[signature]*
476466A0D5E34E0...

Marni Shepard