UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REVLON CONSUMER PRODUCTS LLC
and ELIZABETH ARDEN, INC.

        Plaintiffs,

-against-

GIVE BACK BEAUTY S.A., et al.,

        Defendants.

Case No. 1:24-cv-06438-ER-RWL

## DECLARATION OF J. CHRISTOPHER RACICH

I, J. Christopher Racich, declare and state as follows:

1. I am the President of Vestigant LLC ("Vestigant"). Vestigant is a technology and computer forensic consulting firm that assists clients with factfinding in litigation, regulatory reviews, and business decisions. I founded Vestigant in 2009, and since that time, Vestigant has been retained to provide expertise on hundreds of cases involving computer forensic and electronic discovery issues. I am over the age of eighteen and competent to testify. I have personal knowledge of the subject matter set forth herein.

2. I am a 1993 graduate of Cornell University, where I received my Bachelor of Arts degree in Biology. I later attended law school at the Washington College of Law at American University, graduating with a Juris Doctor in 1997. I have been practicing in the field of computer forensics since 1997.

3. I have taken numerous courses and attended multiple seminars in the field of computer forensics over the past twenty-seven years. I have taught computer forensics courses at the High Tech Crimes Investigation Association (HTCIA). I have taught as an adjunct

Professor of Law at the Washington College of Law at American University, where I have taught courses concerning electronic discovery, computer forensics and the law.

4. During my career in the computer forensics field, I have provided testimony as an expert in computer forensics in numerous courts. I have been qualified at least fifty-four (54) times as an expert in computer forensics in a court of law or arbitration proceeding. A true and correct copy of my Curriculum Vitae, which further shows my experience in the field of computer forensics, is attached hereto as Exhibit A.

5. Vestigant's hourly rate is between $400 to $600 per hour, depending on the tasks performed. A rate sheet for Vestigant's services is attached hereto as Exhibit B. Vestigant's compensation is not related to the outcome of this matter.

6. Vestigant has been engaged by Steptoe LLP on behalf of Plaintiffs to conduct forensic analysis on computers and data utilized by four former employees of Revlon: Vanessa Kidd, Ashley Fass, Dominick Romeo, and Reid Mulvihill (collectively, the "Revlon Employees"). The scope of Vestigant's engagement included identifying any instances of data exfiltration from Revlon systems, and deletion history, with a focus on materials relating to the Britney Brands account. The engagement also included identifying any communications with Give Back Beauty ("GBB"), as well as a timeline of general activity from February 1, 2024 through the Revlon Employee's departure from Revlon.

7. I performed forensic analysis and investigation on the following devices shipped directly to me from Revlon, and received on July 25, 2024 via FedEx tracking number 408808680980:

    a. A Dell Latitude 5420 bearing service tag J2YP2F3 that I have been informed was the computer utilized by Kidd while an employee at Revlon ("Kidd Computer").

    b. A Dell Latitude E7210 bearing service tag 5230VVZ1 that I have been informed was the computer utilized by Fass while an employee at Revlon ("Fass Computer").

    c. A Dell Latitude 5420 bearing service tag 7RB51F3 that I have been informed was the computer utilized by Romeo while an employee at Revlon ("Romeo Computer").

    d. A Dell Latitude 5420 bearing service tag GF3P6J3 that I have been informed was the computer utilized by Mulvihill while an employee at Revlon ("Mulvihill Computer").

8. Under my supervision, each computer was forensically imaged using industry standard techniques and the forensic imaging of each device completed successfully with no errors. Revlon provided Vestigant with Bitlocker Recovery keys that allowed for the decryption of the forensic images. Archive copies of the forensic images were created and all further work was performed on working copies of the forensic images. Each device was processed utilizing Magnet Forensics Axiom software that allowed for the parsing of operating system, application and file artifacts that can be used to help create a timeline of events dealing with potential exfiltration of data.

**Kidd Computer**

9. On February 16, 2024 between 1:08 and 1:10 pm, eastern standard time, the Kidd Computer user downloaded what appears to be compensation files for the other three

3

Revlon Employees from the revlon.harvestcm.com website. The list of these files can be found in the Kidd Spreadsheet, tab Chrome Downloads Records 1-20, attached hereto as Exhibit C.

10. I am informed that Kidd's last day of work at Revlon was May 3, 2024.

11. Between May 3, 2024 at 9:45 pm and May 4, 2024 at 12:15 am, the Kidd Computer user accessed at least 259 electronic files and folders on both the Revlon network and the local computer's hard drive. The access to these files and folders is consistent with the user printing files on a network printer. The forensic data shows that the files were opened using the Kidd Computer. Those files could have been photographed while open on the computer screen. In my experience, users have taken pictures of individual files, taken videos of all files being reviewed or taken notes about the information being reviewed. The list of these opened files and folders can be found in the Kidd Spreadsheet, Exhibit C, tab Jump Lists, lines 2-260. With the exception of the files and folders on the C drive, these files and folder do not exist on the Kidd Computer, but I was able to find artifacts with the file and folder names. These files and folders could have been transferred to a different site with a file transfer. While the documents opened from the Revlon network may never have been saved on a local computer, the Kidd Computer Jump List entries saves the file names and paths of documents that were opened.

12. On May 4, 2024 at 12:28 am, the Kidd Computer user went to the settings of Microsoft Edge and accessed the Clear Browsing Data section, *See* Exhibit C, tab Edge Chromium Current, Records 2-3 & Edge Chromium Last Tabs, Records 21-22. While there is some browsing data available for Microsoft Edge, due to the fact that recent browser cached data is not as prevalent as would be expected given the identified use of the Kidd Computer, it is consistent with the user clearing the web browsing history at this time. This activity has the

potential to remove evidence of the Kidd Computer user moving files to Google Drive or any other cloud system.

13. On May 4, 2024 at 12:31 am, the Kidd Computer user went to the settings of Google Chrome and accessed the Clear Browsing Data section. *See* Exhibit C, tab Chrome Current Session, Records 4-5. While there is some browsing data available for Google Chrome, due to the fact that recent browser cached data is not as prevalent as would be expected, it is consistent with the user clearing the web browsing history at this time. This activity has the potential to remove evidence of the Kidd Computer user moving files to Google Drive or any other cloud system.

**Fass Computer**

14. Between May 8, 2024 and May 23, 2024, the Fass Computer user attached a Toshiba Hard Drive, bearing serial number 20180303008432F, to her Revlon laptop, (the "Toshiba Hard Drive"). During the time the Toshiba Hard Drive was attached, many files and folders were opened from Revlon systems and there is evidence that is consistent with files from Revlon systems being copied to the Toshiba Hard Drive during these times. The list of these files and folders can be found in the Fass Spreadsheet, tabs RecentlyOpened and Shellbags, attached hereto as Exhibit D.

15. During these times that the Toshiba Hard Drive was attached to the Fass Computer at least two hundred files and folders were opened from Revlon systems and/or the Toshiba Hard Drive. Due to the fact that I do not have access to the Toshiba Hard Drive, I can only identify those folders and files opened from the Toshiba Hard Drive using the Fass Computer and subsequently, I do not know the full extent of what's on that device. Based on the information currently available, I cannot determine if more folders and files were moved that

were not opened on the Fass computer. In my experience, a user can move a folder or file without opening it, and in fact it is often typically done.

16. In Exhibit D, tab ExternalCreated, the "Target File Created Date" filed indicates the moment in time the file or folder first existed on the Toshiba Hard Drive. Based on the forensic artifacts, there are numerous folders and files with Target File Created Dates on or after May 8, 2024, which is consistent with at least these identified files and folders being copied onto the Hard Drive on the "Target File Created Dates." In my experience, it is likely that more data than identified was copied to the Toshiba Hard Drive during these times, however, the extent of this activity could only be investigated with the forensic investigation of the Toshiba Hard Drive.

17. Based on review of the Fass Computer "Event Logs," the Toshiba Hard Drive was attached to the Fass Computer on May 8, 2024, May 10-14, 2024, and May 21-23, 2024. *See* Exhibit D, tab Windows Event Logs - Storage. The Fass Computer user copied and/or created the following folders onto the Toshiba Hard Drive during the following times:

(a) On May 8, 2024, the Toshiba Hard Drive was attached to the Fass Computer for the first time at 6:04 p.m. and at least twelve folders were copied to the Toshiba Hard Drive. *See* Fass Spreadsheet, Exhibit D, (ExternalCreated Records 1-12). Based on file names these artifacts appear to be associated with Juicy Couture.

(b) On May 10, 2024 between 6:15 and 6:29 pm, the Fass Computer user copied or created folders and subfolders in the path "D:\REVLON\JUICY COUTURE\VIVA\" on the Toshiba Hard Drive. *See* Exhibit D, ExternalCreated Records 13-15.

(c) On May 14, 2024 between 9:10 and 10:14 pm, the Fass Computer user copied or created subfolders in the path "D:\REVLON\JUICY COUTURE\ on the Toshiba Hard Drive. *See* Exhibit D, ExternalCreated Records 16-31.

(d) On May 21, 2024 between 10:11 am and 8:08 pm, the Fass Computer user copied or created subfolders in the path "D:\REVLON\ on the Toshiba Hard Drive. *See* Exhibit D, ExternalCreated Records 32-42.

(e) On May 22, 2024 between 2:51 pm and 3:09 pm, the Fass Computer user copied or created subfolders in the path "D:\REVLON\Promo on the Toshiba Hard Drive. *See* Exhibit D, ExternalCreated Records 43-48.

18. Between May 21 and May 23, 2024, the Fass Computer user placed at least 574 files and folders in the Windows Recycle Bin. *See* Exhibit D, Recycle Bin Records 1-574. This is consistent with a person attempting to delete documents from their computer.

19. I identified two Microsoft AutoSave documents that appear to concern Give Back Beauty "GBB" on the Fass Computer. I converted these documents from Auto Save documents to Word document files. On May 6, 2024 at 1:40 pm, the Microsoft Word program on the Fass Computer created an Auto Save document with the title "Dear Gianni((Unsaved-311049544066965616)).asd" (Microsoft Word Documents Record 1), attached hereto as Exhibit E. Review of this document shows it to be a draft thank you letter to a person named Gianni at GBB. On May 9, 2024 at 9:40 pm, the Fass Computer user created an Auto Save document with the title "Hi Corrado((Unsaved-311056252500970000)).asd," attached hereto as Exhibit F. Review of this document shows it to be a draft thank you letter to a person named Corrado Brondi at GBB.

7

20.     On May 8, 2024 at 8:09 pm, the user of the Fass Computer opened the file "C:\Users\fassas\Downloads\ Ashely Fass - Addendum Offer Letter_Signed 5.8.24.pdf. This document is not present on the Fass Computer as of the time of imaging, which is consistent with the document being deleted. *See* Exhibit D, tab RecentlyOpened, Line 176.

21.     On May 8, 2024 at 8:09 pm, the user of the Fass Computer opened the file "C:\Users\fassas\Downloads\Ashley Fass - GBB Offer Letter- VP Global Marketing - TH_Signed_5.8.24.pdf." This document is not present on the Fass Computer as of the time of imaging, which is consistent with the document being deleted. *See* Exhibit D tab RecentlyOpened, Line 175.

**Mulvihill Computer**

22.     My review of the Mulvihill Computer shows that the user deleted browsing history and accessed numerous Revlon documents in the final days of his employment at Revlon, providing the opportunity to print and/or copy through other means than the data that was reviewed. The list of the supporting data can be found in the Mulvihill Spreadsheet, attached hereto as Exhibit G. It also shows that the Mulvihill Computer user utilized the Chrome Web Browser to access cloud based websites and personal email accounts. Based on my review of the forensic artifacts extracted from the Mulvihill Computer, the following occurred:

23.     On May 8, 2024 at 10:10 am and 5:05 pm, the Mulvihill Computer user accessed the cloud based storage system Google Drive associated with the account rfmulvhill@gmail.com. *See* Ex. G, tab Cloud Services URLs, Records 1-45. Analyzing Mulvihill's Computer, I am unable to identify which documents were placed or viewed on Google Drive.

24.    On May 22, 2024 at 1:18 pm, the Mulvihill Computer user saved a file entitled "Master File - Fragrance 7.9.79.xlsx," attached hereto as Exhibit G, tab Microsoft Excel Documents, Record 1. Review of this file indicates it has both personal and Revlon information within it, including a worksheet entitled "Q1 '24 - Gross Sales By Country," and passwords to what appear to be Revlon accounts. As it was stored on the Revlon OneDrive, it is possible Mulvihill accessed this file from an asset, such as a personal computer. The Mulvihill Computer would not detect or store a history of this activity.

**Romeo Computer**

25.    Review of the Romeo Computer shows that the user of the computer utilized the Chrome Web Browser to access cloud based websites, what appears to be personal email accounts and what appears to be Give Back Beauty information. The list of the supporting data can be found in the Romeo Spreadsheet, attached hereto as Exhibit H. Based on review of the internet history information on the Romeo Computer, the following occurred:

26.    On multiple occasions in April 2024, the Romeo Computer user accessed webpages that reference GBB. Ex. H, tab Chrome Last Tabs, Records 1-8; tab Chrome Web Visits, Records 1-40, tab Chrome Current Tabs, Records 1-5.

27.    On May 17, 2024 at 1:12 pm, the Romeo Computer user accessed the Google Slides presentation "24-RA-0075 - Britney Spears Social April 2024 - Google Slides" from the google docs account associated with domromeo2@gmail.com. Ex. H, tab Chrome Web History 125-142, 144-151.

28. On May 6, 2024 at 8:54 pm, the **Romeo Computer user ran a google search** "are non-competes enforceable in new York." Ex. H, tab Google Searches, Records 1-10.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and **correct.**

Executed at Vienna, Virginia on September 12, 2024.

*[signature]*

J. Christopher Racich
President
Vestigant, LLC