UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REVLON CONSUMER PRODUCTS LLC and ELIZABETH ARDEN, INC.<br><br>　　　　　　　　　　Plaintiffs,<br><br>　-against-<br><br>GIVE BACK BEAUTY S.A., et al.,<br><br>　　　　　　　　　　Defendants. | Case No. 1:24-cv-06438-ER-RWL |

I, John J. Cotter, under penalty of perjury declare as follows:

1. I am a Partner in K&L Gates LLP, am admitted in this Court, and appear as counsel for Defendants. I submit this declaration to address the alleged harm to Plaintiffs and need for a preliminary injunction and expedited discovery. This declaration discusses affirmative steps taken or proposed by the GBB Defendants, to address Plaintiffs' concerns regarding their alleged confidential information.

2. Protections are in place to limit the potential for use of alleged Revlon trade secrets and/or confidential information.

3. Each of the four named individual Defendants were served and are aware of the Complaint and allegations against them, have been notified to preserve all potentially relevant material and not to delete or destroy evidence, and have stopped using and returned their Give Back Beauty (GBB) company-issued laptops. Ashley Fass' personal hard drive has been collected and secured. The laptops collected from the four individual Defendants are secured and have been replaced with new laptops containing no information from the collected laptops, other than operating system and functional applications.

1

4. Despite Plaintiffs' motion to expedite, discovery is already moving forward. The parties already settled on the Protective Order entered on Monday, September 16, 2024 (Dkt. No. 39, ¶ 5), and the Defendants have also taken steps in collecting and reviewing relevant documents.

5. Two GBB Defendants are located abroad and certain GBB data and IT infrastructure are based in Europe. As noted in the Protective Order, unlike in a typical case, discovery here implicates international law (including data privacy regulations), resulting in significant logistical challenges and upfront costs, adding time and complexity to the discovery process. For example, Defendants may be required to search for and redact certain personal information in order to comply with GBB's obligations under the European Union General Data Protection Regulation (GDPR) or other applicable laws of Switzerland, Italy, and the United Kingdom.

6. In addition, before Defendants conducted any meaningful investigation of the claims at issue, I corresponded, both by email and in Teams meetings, with Plaintiffs' counsel in a good faith attempt to ascertain the scope of and potentially reach agreement to address Plaintiffs' concerns.

7. Plaintiffs have rejected Defendants' proposals that would have provided the relief sought in Plaintiffs' Complaint and motions, including (1) the return of trade secrets belonging to Plaintiff, if any are found; (2) walling off of the individual Defendants in various ways to ensure they are not in a position to breach any obligations to Plaintiffs; and (3) an agreement to restrict GBB's transition efforts in certain ways to avoid making use of any Revlon trade secrets or confidential information. *See* Complaint, Dkt. No. 1, at ¶¶ (i), (ii), and (iii)), as shown in the attached **Exhibit 1**, a true and correct copy of an email chain among the parties following a September 10, 2024 meet and confer discussion.

8. These communications include Defendants' oral offer during the September 10, 2024 meet and confer to provide a written proposal that would address Plaintiffs' concerns by walling off employees in various ways, identifying and returning or destroying Revlon confidential information, and restricting communication with fragrance houses, along with agreeing to a Protective Order to move discovery along.

9. After receiving a signed Protective Order from Defendants, Plaintiffs filed their motions for preliminary injunction and expedited discovery. *See* Dkt Nos. 42-52.

10. On September 14, 2024, before Defendants received all of Plaintiffs' motion papers, I again reached out to Plaintiffs via email to reiterate that, despite Plaintiffs' motions filed in the midst of our ongoing meet-and-confer process, our proposal was still open. I attach as **Exhibit 2** a true and correct copy of the parties' email correspondence from September 14 to 17, 2024, including the above-referenced email to counsel.

11. On September 16, 2024, Defendants provided Plaintiffs with a comprehensive written three-part proposal to address Plaintiffs' concerns, including:

   i. **Walling off employees**: GBB will represent that Ashley Fass and Reid Mulvihill do not presently and have not at any time worked on the Britney Brands account during their tenure at GBB. While Vanessa Kidd and Dominick Romeo both occupy marketing roles with oversight of a number of brands, including Britney Brands, GBB will agree that neither will have any direct contact with fragrance houses regarding the supply of fragrance for Britney Brands.

   ii. **Revlon confidential information**: Without making any admissions regarding the allegations in the complaint, which counsel is still investigating, Defendants will agree that if any defendant is found to be in possession of what Defendants' counsel

3

determines in good faith to be Revlon confidential information, such information will not be used for any purpose by GBB or any of its employees, and will be quarantined, returned to Revlon, or otherwise deleted by means to be agreed to by the parties that preserve the evidence and enables them to prosecute and defend this litigation.

   iii. **Transition work**: GBB will agree not to obtain or attempt to obtain the formulas or information about the fragrance oil molecules of the Britney Brands fragrances as they are currently sold by Revlon. However, GBB reserves its right to otherwise undertake communications with any fragrance house to enable GBB to start selling existing and future Britney Brands fragrances on 1/1/2025 pursuant to its agreement with Britney Brands, including obtaining material to conduct compatibility testing for new packaging.

*See* 9/16/24 email from J. Cotter et al. to M. Dockterman et al., **Ex. 2**.

12. Plaintiffs rejected Defendants' September 16, 2024 proposal, claiming the proposal "did not provide any meaningful protections for Revlon," and requiring that Defendants "cease demanding confidential information from Revlon's fragrance houses," even though Defendants already had agreed to limit communications with fragrance houses. *See* 9/16/24 reply from M. Dockterman, **Ex. 2**.

13. On September 17, 2024, Defendants sought clarification about how Revlon proposed GBB should conduct fragrance house communications and how the individual Defendants could conduct their work, but that day Plaintiffs again demanded even more restrictions. Defendants are considering Plaintiffs latest demands to avoid additional unnecessary motion practice. *See* 9/17/24 Email from J. Cotter to M. Dockterman, **Ex. 2**.

14. Mr. Dockterman asserts that Defendants orally represented on September 10, 2024 that the individual Defendants had been walled off from Britney Brands. (Dockterman Decl., ¶ 10.) I did not make that representation and was not in a position to do so, having neither completed the ongoing investigation of the pertinent facts nor obtained client approval of a final proposal. I did discuss the possibility of walling off the individual Defendants and stated that Defendants would make a written proposal, which would need to be approved after consideration by GBB.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration is executed on September 20, 2024.

By: *John J. Cotter*
John J. Cotter