UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

REVLON CONSUMER PRODUCTS LLC
and ELIZABETH ARDEN, INC.,

                    Plaintiffs,

               -against-

GIVE BACK BEAUTY S.A., GIVE BACK
BEAUTY, LLC, GIVE BACK BEAUTY
AMERICAS LLC, GIVE BACK BEAUTY
INTERNATIONAL LLC, GIVE BACK
BEAUTY HOLDING LTD., VANESSA
KIDD, DOMINICK ROMEO, REID
MULVIHILL and ASHLEY FASS,

                  Defendants.

Case No. 1:24-cv-06438-ER-RWL

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY**

STEPTOE LLP
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 506-3900

*Counsel for Plaintiffs Revlon Consumer
Products LLC and Elizabeth Arden, Inc.*

September 24, 2024

Plaintiffs[1] respectfully submit this reply Memorandum of Law in response to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Expedited Discovery (ECF No. 77) ("Discovery Opp. Mem") and in further support of their Motion.

## PRELIMINARY STATEMENT

Plaintiffs' moving papers demonstrated that the Individual Defendants took specific confidential information belonging to Plaintiffs, and that GBB still retains Plaintiffs' confidential information.  Defendants' papers admit as much.  Plaintiffs made this showing based on forensic analysis of their laptops revealing that Defendant Fass transferred swaths of Revlon files onto an external hard drive as she prepared to leave Revlon and Defendant Kidd accessed over 250 Revlon files after business hours on her last day of work at Revlon.  Defendants Mulvihill and Romeo engaged in other suspicious activity, the precise nature of which could not be ascertained from the laptops alone. It is, therefore, imperative to take discovery as quickly as possible to determine the extent to which Defendants used Plaintiffs' confidential information.

Defendants' Opposition and their unsurprising denials of malfeasance do not obviate Plaintiffs' need for discovery, but underscore that need.  Defendants' submissions acknowledge that Fass brought a hard drive containing Revlon's documents to GBB and attached that hard drive to her GBB computer.  Fass admits to accessing "various documents"—conveniently unidentified—on that hard drive while at GBB.  And, while her carefully crafted declaration denies that she "downloaded or saved any of those files to her GBB computer," nowhere does she make the simple assertion that she never used any Revlon information while working at

---

[1]     Capitalized terms used but not defined herein have the meaning ascribed to them in Plaintiff's moving papers in conjunction with its motions for Expedited Discovery or for a Preliminary Injunction.

GBB.  The adverbs qualifying her assertion that she never "knowingly" or "improperly" shared Revlon's trade secrets with GBB speak volumes in their equivocal ambiguity.  Compounding the specter of harm to Revlon is that, while GBB has been aware of Fass's misappropriation of Revlon documents since the filing of the Complaint on August 26, 2024, it did not actually collect her hard drive until September 19, 2024, the day before Defendants needed to submit their opposition to Plaintiffs' motions, allowing Fass weeks to engage in spoliation of Revlon's information.  Fass Decl. ¶ 13. Revlon should be entitled to discover exactly what information Fass took from Revlon and what was done with it.

As for the other former employees, Defendants have not removed the taint of suspicion from their pre-departure conduct.  For example, Kidd claims that she needed to access and delete hundreds of files after hours to protect Revlon's confidential information from being turned over to Revlon itself.  This contention defies credulity.  Moreover, Kidd does not explain why, if all she was doing was cleaning her computer for return to Revlon, she needed to spend 2-1/2 hours under cover of night accessing Revlon's files.  *See* Racich Decl. ¶ 11.  Of particular concern is that Kidd's role at Revlon included planning for the continuation of Revlon's business with Britney Brands (Shepherd Decl. ¶ 3), as she exited the company, Kidd accessed Revlon documents concerning planning and strategy for Britney Brands for 2025, and this is precisely Kidd's role at GBB, further increasing the likelihood and risk that she is using Revlon information in her current position.  *Compare* Racich Decl. ¶ 11, Ex. C tab Jump Lists, line 37 (Fass accessed a document entitled ███████████████████████████ .") *with* Stella Decl. ¶ 15 (identifying Kidd's role as "working on future brand development plans to go into effect as of January 1, 2025.")  Kidd's qualified assertion that she did not take or use Revlon's "trade secrets or confidential information" is inadequate, and

2

Revlon should not have to accept Kidd's self-serving assertions at face value.  The same is true for Romeo and Mulvihill, neither of whom testify that they did not take any Revlon documents or information upon their departure.  Both, like Fass and Kidd, qualify their assertions by claiming not to have taken or used "trade secrets or confidential information."  *See* Romeo Decl. ¶¶ 9-10; Mulvihill Decl. ¶¶ 14-15.

Ultimately, Defendants concede that they have Revlon information, but nowhere do they agree to return the stolen property, or even identify what exactly was taken or done with it. Expedited discovery is warranted under these circumstances.

<u>**ARGUMENT**</u>

**LIMITED EXPEDITED DISCOVERY IS WARRANTED HERE**

**A.    Plaintiffs Have Shown That Expedited Discovery Is Reasonable**

Plaintiffs demonstrate in their moving and reply preliminary injunction papers that they are likely to succeed on the merits and that they face irreparable harm.  Defendants cannot seriously dispute these showings when, at a minimum, they admit that they are in possession of a hard drive containing Revlon documents surreptitiously taken by one of GBB's employees and brought to GBB, and when they are quite likely in possession of many more Revlon documents taken by other employees.  The artifacts from Plaintiffs' forensic examination show that the Individual Defendants accessed information as they were leaving, creating a strong  inference that they transferred the information to their personal emails or Google drives, or the like—and one loaded scores of files onto a portable drive that she then connected to GBB's computer system. To date, Defendants have failed to identify to Revlon exactly what was taken and, incredibly, have declined to return Revlon's information.

These are the simple facts necessitating discovery, so that Revlon can expeditiously learn the full extent of the information in Defendants' possession and what has been done with it.

Only by knowing which accounts' information has been compromised and what, specifically, was taken can Plaintiffs take steps to limit the damage to their business, reputation and relationships, and prevent Defendants from using the proprietary information Revlon painstakingly developed over many years to compete with Revlon's fragrance business. Defendants' protestations of innocence are inadequate.  Plaintiffs should not have to simply accept that Defendants are not using *what they consider to be* Plaintiffs' confidential information.  There is no reason for Defendants to have any Revlon information and no legitimate reason for Fass to have taken the Juicy Couture contracts from Revlon if she did not expect to exploit them.  Indeed, Fass offers none.

In short, expedited discovery is warranted to uncover the full nature and extent of Defendants' malfeasance in order to enable Plaintiffs to stem the continuing harm.  *Cf. Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990) (granting expedited discovery because it "may very well lead to evidence of continuing [copyright] infringement by this defendant or others; it may also lead to the discovery of future plans to infringe or the discovery of additional infringing merchandise.").  As also noted in that case:

> The Court also does not find that expedited discovery would pose a substantial hardship to Mow Trading or Mr. Yun. The information sought should be within the possession and control of Mow Trading, and expedited discovery on these issues does not appear to be overly broad or burdensome. Furthermore, the irreparable injury that defendant potentially faces in the absence of expedited discovery is of far greater significance than any inconvenience to defendant from such expedited discovery.

*Id*.  The same reasoning applies here with equal force.  For example, if Plaintiffs learn that any of the Defendants have been in contact with any Revlon licensor or supplier concerning an existing Revlon account, they can try to take steps to protect themselves from any reputational damage,

reassure its counterparty of its continuing commitment and preserve the business relationship. As noted in Plaintiffs' moving papers, the forensic analysis conducted to date may be just the tip of the iceberg, and Plaintiffs should be entitled to understand what still lies below the surface.[2]

**B.    Plaintiffs' Discovery Requests are Narrow and Limited**

In order to try to create an argument where none exists, Defendants misrepresent the scope of Plaintiffs' discovery requests to disguise their obviously limited nature and contend that the requests are overbroad.  Plaintiffs' document requests contain eight identical requests to all Defendants; Defendants misleadingly suggest that Plaintiffs seek 72 categories of documents.

---

[2]    The cases relied on by Defendant fail to show that expedited discovery is unwarranted here.  Many of the cases are cited for the general legal principle, for example, that expedited discovery is not the norm.  *See, e.g.*, Discovery Opp. Mem. 2-4.  In several other cases, the courts actually granted expedited discovery.  *See, e.g., N. Atl. Op. Co v. Evergreen Distribs., LLC*, 293 F.R.D. 363 (E.D.N.Y. 2013) (granting expedited discovery as to certain defendants as modified by the court); *Poor v. Starbucks Corp.*, No. 22-CV-7255 (ARR)(JRC), 2024 WL 3401421 (E.D.N.Y. July 12, 2024) (permitting discovery pursuant to order allowing expedited discovery).  Other cases relied on by Defendants are wholly inapposite.  *See, e.g., Special Situations Cayman Fund, L.P. v. Dot Com Ent. Grp., Inc.,* No. 03-CV-0811E(F), 2003 WL 23350128, at *1, *9 (W.D.N.Y. Dec. 5, 2003) (in action by minority shareholders seeking to prevent a takeover of the corporation, injunctive relief and expedited discovery denied for failure to show irreparable harm where plaintiffs own sufficient shares to call a special shareholders' meeting to present a slate of directors who could reverse the challenged actions; "Plaintiffs thus fail to demonstrate that they will be irreparably harmed because they have recourse to a self-help remedy that is the same as the remedy sought from this Court."); *Pietsch v. Marcantonio*, No. 13-CV-4696 (JS)(SIL), 2016 WL 1069656, at *11 (E.D.N.Y. Mar. 16, 2016) (in *pro se* § 1983 action, dismissing complaint and denying expedited discovery where "Plaintiff has not provided any basis for the Court to reasonably conclude that any of the individuals and/or entities that he seeks to subpoena have the information he seeks."); *Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 599 (S.D.N.Y. 2017) (denying jurisdictional discovery where the court has determined to consider jurisdictional issues on a pre-discovery basis and where the proposed discovery went beyond issues relating to jurisdiction); *Shaughnessy v. Scotiabank*, No. 22-CV-10870 (LAP), 2024 WL 1350083, at *36 (S.D.N.Y. Mar. 29, 2024) (denying motion for expedited discovery made by defendants to refute plaintiffs' age discrimination claim where "Defendants do not allege that denial of expedited discovery will result in irreparable injury").

Of those eight categories of documents requested by Plaintiffs, one simply seeks the return of Revlon's information and one seeks forensic analysis of the Individual Defendants' computers and devices to ascertain the scope of what was taken. The Individual Defendants' demonstrated practice of seeking to cover the tracks of their electronic activity warrants a limited forensic investigation here.

The six remaining requests are also limited to discovering what information was taken from Revlon and what was done with that information. These requests are considerably narrower than the discovery to which Plaintiff will be entitled on all of their claims in the ordinary course of litigation; the expedited requests are limited to ascertaining what Confidential Information is in Defendants' possession and what they have done with it so that this Court can make a meaningful determination on preliminary relief to protect Plaintiffs' trade secrets. Specifically, requests two and three seek to discover whether the Individual Defendants were asked to, or did, share information with GBB prior to departing Revlon, and whether they discussed with each other what information would be taken to GBB. This will shed light on the scope of information that may be in GBB's hands, including Revlon's business plans and strategies, as well as information relating to specific accounts or business partners. The remaining four requests all concern how GBB or the Individual Defendants may have misused Revlon's Confidential Information. All of these requests are limited to a period of nine months or less. The requested depositions of the Individual Defendants and U.S.-entity Defendants are likewise limited to only the subjects addressed in the document requests.[3]

---

[3]    To the extent that Court determines that any of the specific requests are overbroad, the remedy should not be denial of Plaintiffs' motion, but a narrowing of the requests, as was done in *N. Atl. Op. Co.,* 293 F.R.D. at 371-72, relied on by Defendants. There, the Court found it reasonable to direct expedited discovery as to certain defendants, but narrowed the relevant time

Incredibly, Defendants express concern about providing discovery that may share its sensitive information with a competitor (Discovery Opp. Mem. 5); this is the precise concern of Plaintiffs that underlies this action and the motions for injunctive relief and discovery.

## C.    European Privacy Laws Are No Bar to Discovery Here

Defendants' invocation of European data privacy laws as a bar to providing discovery is a red herring. The discovery sought concerns information taken by the Individual Defendants in the United States and brought with them when they went to work for their new employer in the United States. Defendants do not claim that any of the events that are the subject of Plaintiffs' discovery requests occurred outside the United States or that the responsive documents reside outside the United States. In fact, Fass's hard drive was used and is being held in the United States along with the Individual Defendants' computers. Other than generically referencing international data privacy laws, Defendants have not shown that such laws are implicated at all by the specific requests at issue here.

## D.    Plaintiffs' Did Not Unreasonably Delay in Seeking Relief

As discussed in Plaintiffs' companion reply in connection with their request for a preliminary injunction, Plaintiffs acted diligently in seeking this relief after discovering the suspicious activity on the individual Defendants' laptops. Defendants' claim that Plaintiffs have been in possession of those laptops since the employees' departures from Revlon misses the point: it was not until August 2024, when Revlon's counsel received the results of the forensic analysis, that Plaintiffs knew for certain that the Individual Defendants took Confidential Information when they decamped to GBB. The Complaint and the motions for injunctive relief and expedited discovery were filed promptly thereafter. Dockterman Discovery Decl. ¶¶ 4-5.

---

period of the document requests to the preceding 24 months, limited the scope of certain specific requests, and directed that responses be served in ten rather than seven days. *Id*.

## CONCLUSION

For the reasons stated above and in Plaintiffs' moving papers, Plaintiffs respectfully submit that their motion for expedited discovery should be granted in its entirety and that Defendants should be directed to provide the discovery requested in Plaintiffs' moving papers (Dockterman Discovery Decl. Exs. A and B) and to preserve all documents related to this dispute, as well as all hardware, such as personal computers, external hard drives and cell phones, until further order by this Court.


Dated: September 24, 2024


                                    By:  /s/ *Michael Dockterman*

                                         Michael Dockterman
                                         227 West Monroe Street, Suite 4700
                                         Chicago, IL 60606
                                         Telephone:  (312) 577-1300
                                         Email:  mdockterman@steptoe.com

                                         Elyse D. Echtman
                                         1114 Avenue of the Americas
                                         New York, NY 10036
                                         Telephone:  (212) 506-3900
                                         Email:  eechtman@steptoe.com

                                         *Attorneys for Plaintiffs Revlon Consumer Products LLC and Elizabeth Arden, Inc.*

8