# K&L GATES

October 23, 2024

Ronie M. Schmelz
Partner
Ronie.Schmelz@klgates.com

T +1 310 552 5002
F +1 310 552 5001

**VIA ECF**

Hon. Edgardo Ramos
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *Revlon Consumer Products LLC et al. v. Give Back Beauty S.A. et al.,*
      Case No. 1:24-cv-6438-ER-RWL – Response to Request for Pre-Motion Conference

Dear Judge Ramos:

     Pursuant to the Court's Order of October 21, 2024 (Dkt. 119), we write in response to Revlon Consumer Products LLC ("Revlon") and Elizabeth Arden, Inc. ("Elizabeth Arden," collectively with Revlon, referred to herein as "Plaintiffs") request for a pre-motion discovery conference regarding the scope of the limited expedited discovery the Court granted at a September 25, 2024 hearing (the "Order," Dkt. 103). We submit this response on behalf of Defendants Give Back Beauty S.A., Give Back Beauty, LLC, Give Back Beauty Americas, LLC, Give Back Beauty International LLC, and Give Back Beauty Holding Ltd., (collectively, the "GBB Defendants") and the four individual Defendants, Vanessa Kidd, Dominick Romeo, Reid Mulvihill, and Ashley Fass, (collectively, the "Individual Defendants," who together with the GBB Entities are referred to collectively as "Defendants").

     On September 27, 2024, Plaintiffs served Defendants with the discovery attached hereto, as well as four deposition notices, requesting a response within ten days. Defendants timely responded to the requests and notices on October 7, 2024 indicating they would produce certain documents and raising objections to several of the discovery requests on the grounds they exceeded the scope of the Court's Order, among other reasons. On October 8, 2024, Plaintiffs requested a meet and confer to discuss unidentified "deficiencies" in Defendants' responses.

     On October 9, 2024, counsel for the parties met via Zoom conference for nearly two hours to discuss their respective positions, focusing on the breadth of Plaintiffs' definition of the term

"Revlon Information," as well as the scope of the Court's Order granting limited expedited discovery. Defendants understand the Court's Order exactly as Your Honor Observed, to grant discovery "generally [of] what information, including documents, the individuals took with them." Defendants further understand the Order allows depositions on the same subject, as well as examination into any information, if any, the Individual Defendants shared with GBB before they departed Revlon and the extent to which the Individual Defendants used any Revlon information in connection with their duties at GBB, if at all.

During the meet and confer, the Individual Defendants agreed to amend their response to Document Request No. 1 to address some of Plaintiffs' concerns regarding the definition of "Revlon Information." The GBB Defendants also agreed to amend their response to Document Request No. 1 to omit reference to an agreed discovery protocol involving a third-party vendor forensic examiner that Plaintiffs declined to endorse, to be replaced with the GBB Defendants' plan for a limited search of the Individual Defendants' GBB laptops. GBB confirms that the laptops are presently being examined by the third-party forensic investigator for "documents that the individuals took with them," if any, and the results will be reported to Plaintiffs.

The Individual Defendants served their amended responses (attached) on October 11, 2024, and the GBB Defendants served their amended responses on October 14, 2024 (attached). The parties further exchanged emails on October 14, 15, 16, and 18 regarding the scope of the anticipated production and deposition dates.

Defendants' positions on the disputed Document Requests Nos. 2 through 8 and Interrogatories are informed by the language and logic of the Court's Order – that "plaintiffs should be able to determine as quickly as possible what exactly the individual defendants took with them, saw after they completed their employment with Revlon" (Dkt. 118, Tr. at 94). Defendants' positions are also based on the understanding that the discovery the Court ordered was more limited than that which Plaintiffs requested by their motion for expedited discovery, since the Court expressly did not rule that Plaintiffs could serve the requests that accompanied their motion. Yet a comparison of Plaintiffs' requests in their motion (Dkt. 52) and the requests they subsequently served reveals that they are nearly the same. *See,* Ex. A, attached. That is, Plaintiffs treat their motion as having been granted as filed, when Your Honor necessarily narrowed the permitted scope of expedited discovery.

The burdens of the discovery Plaintiffs have demanded are significant and inconsistent with swift, expedited production. Defendants incorporate by reference herein all of the arguments they made in Opposition to Plaintiffs' Motion to Expedite Discovery (Dkt. 78). For example, the disputed document requests require a search of (1) numerous months' worth of GBB's communications with its own employees, the Individual Defendants; (2) GBB's marketing plans for the Britney Spears fragrances and communications with members of the fragrance industry, irrespective of a timeframe, author, or whether they reference Revlon and regardless of whether they were prepared in the absence of any Revlon documents allegedly taken by the individual Defendants; and (3) all of GBB's documents since March 2024 to search for information that *might* be "Revlon Information" that is not in the public domain, regardless of whether the information has

any relationship to the Individual Defendants. Document Request 3 requires Defendants to be familiar with or make comparisons to "Revlon Information," and confirm the origin of every possibly responsive document, including what is or is not in the public domain. The breadth of the requests is overbroad and burdensome not only for practical reasons, but also because they bear little relationship to the limited discovery the Court ordered.

Although the requested information may be discoverable in the normal course, it is *merits* discovery beyond the limited subjects the Court opened to expedited discovery. For example, Defendants objected to the interrogatories, not because they are interrogatories, but because they seek information about the Individual Defendants' use of technologies that could have been used to store information – a subject not within the scope of the Court's Order. Certain requests, moreover, go beyond what would be discoverable in the ordinary course, including Document Request No. 7, which seeks "[a]ll documents concerning communications …between any Defendant and …any entity known or believed to have a fragrance licensing relationship with Revlon…," regardless of whether the document contains any information related to Revlon's business.

As Plaintiffs note in their letter requesting a pre-motion discovery conference, "[i]t would be inefficient and impractical for Plaintiffs to examine the individual defendants without the benefit of responsive documents on *all* expedited discovery topics." (Dkt. 118, p. 2.) Defendants agree and therefore await further instruction from the Court on October 30 to understand the scope of permitted expedited discovery in order to properly prepare the Individual Defendants for deposition.

Thank you for your attention to these important matters.

Respectfully submitted,

*Ronie Schmelz*

Ronie M. Schmelz
Partner

| EXHIBIT A | |
|---|---|
| Plaintiffs' Proposed Document Requests in Motion for Expedited Discovery | Plaintiffs' Actual Document Requests Subsequent to Order on Expedited Discovery |
| 1. All Revlon Documents taken and/or retained by the Revlon Employees. | 1. All Revlon Information in the possession, custody or control of the Revlon Employees as follows:<br>a. For Vanessa Kidd, after 5:00 p.m. on May 3, 2024;<br>b. For Ashley Fass, after 5:00 p.m. on May 23, 2024;<br>c. For Dominick Romeo, after 5:00 p.m. on May 29, 2024;<br>d. For Reid Mulvihill, after 5:00 p.m. on May 31, 2024. |
| | 3. All documents in GBB's possession, custody or control containing, reflecting or concerning Revlon Information that was not obtained from the public domain and concerns purchasing and internal cost information; marketing and development plans; licensors and potential licensors; licensing agreements (including Revlon's agreement with Britney Brands); price and cost data; marketing techniques; methods of obtaining business; forecasts and forecast assumptions and volumes; future plans and potential strategies for the fragrance business (including potential staffing changes and commitments to employees); contracts and their contents; sales volume, sales outlets, sales geographies, production and distribution costs and profit margins from March 1, 2024 to the present. |
| 2. All Documents concerning Communications between individuals associated with the GBB entities and the Revlon Employees in the time period between January 1, 2024 and May 31, 2024, inclusive of offers of employment, non- | 4. All documents concerning communications between any Revlon Employee and GBB (or anyone acting on GBB's behalf, including recruiters) from March 1, 2024 to the present, including but not limited to transcripts, |

| | |
|---|---|
| disclosure agreements, and employment agreements. | summaries, notes or recordings or interviews of Revlon Employees, where such communications contain or relate to Revlon Information. |
| 3. All Documents concerning communications between and among the Revlon Employees relating to GBB that implicate Revlon's Confidential Information between January 1, 2024 and May 31, 2024. | 5. All documents concerning communications between/among the Revlon Employees from March 1, 2024 through May 31, 2024, concerning GBB where at least one party to the communication was still employed by Revlon. |
| 4. All Documents concerning Communications between GBB and representatives of Britney Brands from January 1, 2024 to August 26, 2024. | |
| 5. All agreements between GBB and Britney Brands. | 6. The April 29, 2024 agreement between GBB and Britney Brands and all drafts exchanged between the parties. |
| 6. All Documents concerning transition efforts that GBB has undertaken in connection with its planned commercialization of Britney Spears-branded fragrance products, including but not limited to business plans and communications with Revlon's suppliers. | 8. All GBB documents concerning GBB's actual or potential marketing plans for Britney Spears fragrances. |
| 7. Any and all Communications between GBB and entities with fragrance licensing relationships with Revlon from February 1, 2024 to the present. | 7. All documents concerning communications from March 1, 2024 to the present between any Defendant and a representative of any entity known or believed to have a fragrance licensing relationship with Revlon, including but not limited to Juicy Couture. |
| 8. Produce for inspection, and forensic examination, the Revlon Employees professional electronic devices, inclusive of cellphones, tablets, laptops, desktops and external hard drives to search for Revlon's Confidential Information. | 2. A printout or list of all files (active, recoverable and deleted) on any hard drive or other electronic device used by a Revlon Employee to access, store, or use Revlon Information since March 1, 2024 (including the Toshiba Hard Drive bearing serial number 20l 80303008432F (the "Toshiba Hard Drive")), and all available metadata for those files (including file name, file path, date created, |

|  | date last written, date last access, date entry modified date, file size, deleted state, MD5 hash value). To preserve the integrity of the original media and avoid potential spoliation, Plaintiffs propose that the device be imaged by an independent forensic expert, who can generate the requested list from the image. |
|---|---|